1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   STEVEN D. PHEGLEY,                Case No. EDCV 14-0645 SS

12                   Plaintiff,

13        v.                           **MEMORANDUM DECISION AND ORDER**

14   CAROLYN W. COLVIN, Acting
     Commissioner of the Social
15   Security Administration,

16                   Defendant.

17

18

19                                    **I.**

20                            **INTRODUCTION**

21

22        Steven D. Phegley ("Plaintiff") seeks review of the final

23   decision of the Commissioner of the Social Security

24   Administration (the "Commissioner" or the "Agency") denying his

25   application for Supplemental Security Income.  The parties

26   consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of

27   the undersigned United States Magistrate Judge.  For the reasons

28   stated below, the decision of the Commissioner is AFFIRMED.

**II.**

**PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income ("SSI") on November 30, 2011. (Administrative Record ("AR") 179). He alleged a disability onset date of November 29, 2007. (Id.). The Agency denied Plaintiff's application on March 9, 2012, and upon reconsideration on October 31, 2012.[1] (AR 109, 117). On November 21, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 18). Plaintiff testified before ALJ Lawrence J. Duran on June 24, 2013 (the "ALJ Hearing"). (AR 40-60). On July 22, 2013, the ALJ issued a decision denying SSI. (AR 15-32).

Plaintiff filed a request for review of the ALJ's unfavorable decision on August 1, 2013. (AR 14). On February 10, 2014, the Appeals Council ("AC") adopted most of the ALJ's findings, including the finding that Plaintiff was not disabled. (AR 1-7). However, the AC disagreed with the ALJ's finding that Plaintiff was capable of performing his past relevant work. (AR 4). The AC found that Plaintiff retained the capacity to find employment as a housekeeping cleaner or a mail clerk. (AR 6-7). The Appeals Council's decision constituted the

---

[1] In a previous proceeding, an Agency administrative law judge ("ALJ") found Plaintiff disabled for a "closed period" of September 2005 to March 2006. (AR 18). The ALJ in the present action opined that Plaintiff had rebutted the presumption that he was not disabled after March 2006, by showing a material "changed circumstance." (Id.).

Commissioner's final decision.  (AR 1).  On April 11, 2014, Plaintiff filed the instant action.  (Dkt. No. 3).

## III.

### FACTUAL BACKGROUND

Plaintiff was born on September 26, 1962.  (AR 179).  He was forty-five years old as of the alleged disability onset date and fifty years old at the time of the ALJ Hearing.  (AR 37, 179).  He is divorced, has five children, and lives with his father.  (AR 41-42).  Plaintiff previously worked as a restaurant manager, a stocker for a mail order distributor, and an assembly line worker (AR 215, 220), but did not work after 2002.  (AR 55).  Plaintiff testified that he was unable to work due to an inability to focus and difficulties with his memory.  (AR 49).  Plaintiff has taken prescription medications for chronic depression, attention deficit disorder and bipolar disorder.  (AR 53).

Plaintiff is 52 years old.  (AR 41).  He has a valid California Driver's License.  (Id.).  He finished the eleventh grade, and can do simple math and count money.  (AR 42).  He was incarcerated in 2002 for transportation of a controlled substance and he has not had substantial gainful employment since that time.  (AR 43).  He fixes his own meals, mops and sweeps, vacuums, does dishes and laundry, and cares for pets.  (AR 45).  He goes shopping, (AR 46-47), watches TV and uses a computer.

(AR 46-47).  He sees family frequently, his girlfriend once a week, spends approximately eight hours per day watching TV, reads for thirty minutes each day, and spends about an hour and a half on the computer.  (AR 48).

Plaintiff has been diagnosed with major depressive disorder, bipolar disorder, anxiety, polysubstance dependence and attention deficit hyperactivity disorder ("ADHD").  (AR 339, 350).  On February 15, 2012, Plaintiff informed the consultative psychiatrist that he had "been dealing with methamphetamines since [age] 28," but last used these drugs in 2002.  (AR 336). The psychiatrist found Plaintiff to be "in full sustained remission."  (AR 339).  Plaintiff admitted to being a former drug addict and alcoholic but attended Alcoholics Anonymous and Narcotics Anonymous.  (AR 336, 340).  Plaintiff also told the psychiatrist that he had previously been arrested for driving on a suspended license and for possession of methamphetamines, but his license was later restored.  (AR 337; see also AR 180).

Plaintiff has a history of morbid obesity and hypertension. (See, e.g., AR 271, AR 332).  Prior to his alleged disability onset date, Plaintiff admitted to smoking one pack of cigarettes per week and to smoking for at least twenty years.  (AR 272, 281).  Plaintiff has complained of low back pain associated with a 1999 automobile accident, but an orthopedist who examined Plaintiff on January 30, 2012, noted no bone, joint, or neurological abnormalities.  (AR 331-334).

**A.   Treating Mental Health Physicians' Opinions**

### Riverside County Department of Mental Health

Plaintiff first sought treatment at the Riverside County Department of Mental Health ("County") on May 27, 2003. (AR 359). In an August 18, 2009 assessment, treating psychiatrist Elizabeth Leonard diagnosed type II bipolar disorder. (AR 601). Dr. Leonard noted Plaintiff's previous diagnoses with intermittent explosive disorder and ADHD. (AR 602). Dr. Leonard found Plaintiff depressed, with racing thoughts, motor agitation, excessive anxiety, restlessness, fatigue and irritability. (Id.). Plaintiff was taking prescription Lamictal, Seroquel, Requip, Zoloft, and Wellbutrin.[2] (AR 603). However, Plaintiff was responsive to interaction with others, had normal thought processes and displayed an appropriate affect. (AR 604). On April 17, 2012, Jesus Bucardo, M.D., another treating psychiatrist, reported that Plaintiff's depression and anxiety symptoms "continue improving", that Plaintiff was sleeping "OK" with medication, and that Plaintiff did not experience any "racing thoughts, paranoia, or angry outbursts." (AR 354). Plaintiff was oriented, alert, able to concentrate and "in good spirits." (Id.).

---

[2] According to the National Institutes of Health, these medications are prescribed for bipolar disorder (Lamictal, Seroquel), restless legs syndrome (Requip), depression and anxiety disorder (Zoloft), and depression (Wellbutrin), respectively. See MEDLINEPLUS, http://www.nlm.nih.gov/medlineplus /medlineplus.html, and enter medication name in search box (last visited Feb. 26, 2015).

**B.** **Consulting   Physicians'   Opinions   Concerning   Plaintiff's   Mental   Condition**

    **1.**   **Romualdo R. Rodriguez, M.D.**

On   February   15,   2012,   psychiatric   consultative   doctor Romualdo Rodriguez examined Plaintiff.   (AR 335-41).   Plaintiff described   depression   as   his   chief   complaint.   (AR   335). Plaintiff reported struggling with "focus, concentration, losing things, his mind jumping from subject to subject, and leaving things unfinished and undone."   (AR 336).   Plaintiff attributed his earlier methamphetamine use to an attempt to self-medicate his ADHD.   (Id.).   Plaintiff reported having "a fair relationship with family, relatives, friends, neighbors, and others."   (AR 337).   He could perform household chores, cook, bathe, drive, shop and run errands.   (Id.).

Although   Plaintiff's   affect   was   "somewhat   sad,"   Dr. Rodriguez found him alert, intelligent, and non-delusional.   (AR 338).   Dr. Rodriguez opined that Plaintiff could "understand, remember, and carry out simple one or two-step job instructions" but not "detailed and complex instructions."   (AR 340-41) (emphasis in original).   Plaintiff was "[s]lightly limited in ability to relate and interact with supervisors, coworkers, and the public" and in his ability to "perform work activities without special or additional supervision."   (AR 341).   Plaintiff was also "slightly limited" in his ability to cope with workplace

6

stresses and "moderately limited" in maintaining concentration, persistence and pace.  (AR 341).

### 2.   Adrianne Gallucci, Psy.D., and J. Hartman, M.D.

State agency consultative psychologist Adrianne Gallucci, Psy.D., and psychiatrist J. Hartman, M.D., reviewed Plaintiff's medical and psychiatric records on October 19, 2012.  (AR 93-107).  Dr. Gallucci found that Plaintiff retained the mental capacity to, <u>inter</u> <u>alia</u>, understand, remember and carry out simple instructions; pay attention for two-hour segments, sustain an ordinary routine, and maintain regular and punctual work attendance; and respond appropriately to changes in work routines.  (AR 104).  Dr. Hartman found that Plaintiff was limited to unskilled work but had the capacity for simple, repetitive tasks.  (AR 106).

## C.   Vocational Expert Testimony

Vocational Expert ("VE") Joseph Torres testified during the hearing.  (AR 60-64).  The VE identified two jobs -- stock clerk and small products assembler -- as relevant work that Plaintiff had performed in the previous fifteen years.  (AR 61).  As further discussed in this decision, the Appeals Council later rejected the VE's conclusion that these positions qualified as past relevant work as Plaintiff did not make enough earnings for these episodes of work to qualify under the Agency's regulations.

The ALJ posed several hypotheticals based on an individual of Plaintiff's age and educational background with various non-exertional limitations. The individual could perform simple instructions, but could not perform fast-paced work. (AR 62). The individual could not have "intense interaction with co-workers, supervisors, or the public" or "intense concentration" for more than one hour without a five-minute break. (Id.). The VE opined that such an individual could perform Plaintiff's past work as a stock clerk as Plaintiff had previously done the job, but not according to the Dictionary of Occupational Titles ("DOT") listing. (Id.). The individual could also work as an assembler according to the DOT listing. (Id.). Alternatively, the individual could find work as a packer, with 325,000 jobs nationally and 1,900 regionally; a housekeeper cleaner, with 425,000 jobs nationally and 2,300 regionally; or a mail clerk, with 250,000 jobs nationally and 1,600 regionally. (AR 62-63). However, if the same individual had to be absent or "off-task" five percent of the time, he would be unable to perform Plaintiff's past relevant work or any other jobs. (AR 63).

D.   **The Appeals Council's Review**

The Appeals Council adopted the ALJ's statements regarding the applicable issues and facts, and largely adopted the ALJ's findings and conclusions. (Id.). However, the Appeals Council modified Plaintiff's RFC, adopting Dr. Hartman's finding that Plaintiff was limited to frequent left overhead reaching. (AR

5).   The Appeals Council also concluded that Plaintiff had no past relevant work, because his earnings as a stock clerk and small products assembler fell below the level required for "substantial gainful activity."  (AR 5; see also 20 C.F.R. § 416.960 (criteria for determining past relevant work)).

Once an ALJ or the Appeals Council determines that a claimant has no past relevant work, the burden shifts to the Commissioner to determine whether the individual may find employment appropriate to his residual functional capacity.  See Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).  Because the Appeals Council found Plaintiff not disabled given his vocational factors and RFC, it considered whether Plaintiff could find other employment.  (AR 5-6).  The Appeals Council found that Plaintiff could work as a housekeeping cleaner, with 425,000 positions nationally and 2,300 regionally, or a mail clerk, with 250,000 positions nationally and 1,600 regionally.[3]  (AR 6-7). The Appeals Council's decision constituted the Commissioner's final decision.

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a

---

[3] These two jobs were also among those also identified by the VE. (AR 62-63).

continuous period of at least twelve months.  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  *Tackett*, 180 F.3d at 1098 (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work?  If

not, the claimant is found disabled.  If so, the
claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,
262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20
C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).


     The claimant has the burden of proof at steps one through
four, and the Commissioner has the burden of proof at step five.
Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an
affirmative duty to assist the claimant in developing the record
at every step of the inquiry.  Id. at 954.  If, at step four, the
claimant meets his burden of establishing an inability to perform
past work, the Commissioner must show that the claimant can
perform some other work that exists in "significant numbers" in
the national economy, taking into account the claimant's residual
functional capacity ("RFC"), age, education, and work experience.
Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20
C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do
so by the testimony of a vocational expert ("VE") or by reference
to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part
404, Subpart P, Appendix 2 (commonly known as "the Grids").
Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a
claimant has both exertional and non-exertional limitations, the
Grids are inapplicable and the ALJ must take VE testimony.  Moore
v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v.
Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ AND APPEALS COUNCIL DECISIONS**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not under a disability within the meaning of the Social Security Act from September 30, 2011, through the date of the ALJ's decision on July 22, 2013. (AR 19). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since September 30, 2011. (AR 20). At step two, the ALJ found that Plaintiff had the severe impairments of chronic lumbar sprain/strain, hypertension, major depressive disorder, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), anxiety, and schizoaffective disorder (20 C.F.R. § 416.920(c)). (AR 21). The ALJ found that Plaintiff also had polysubstance dependence, but that this condition was in "full remission." (Id.).

At step three, the ALJ found that Plaintiff's impairments, "considered singly and in combination, do not meet or medically equal the criteria of any medical listing" in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Id.). The ALJ specifically noted that Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.02, 12.03, 12.04, and 12.06.[4] (Id.). Because

---

[4] The cited listings relate to organic mental disorders (12.02); schizophrenic, paranoid or other psychotic disorders (12.03); chronic affective disorder (12.04); and anxiety disorder (12.06). 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

these listings' "Paragraph B" criteria must be considered at steps four and five of the sequential evaluation process, however, the ALJ factored these criteria into Plaintiff's RFC.[5] (AR 22-23).  The ALJ opined that Plaintiff faced only "mild restriction" in his daily activities, which were "somewhat normal."  (AR 22).  Plaintiff faced "mild" difficulties in social functioning and "moderate" difficulties in concentration, persistence, or pace.  (Id.).  The ALJ then found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform a range of medium work as defined in 20 CFR 416.967(c) and [Social Security Rulings ("SSR")] 83-10 specifically as follows: [Plaintiff] can lift and/or carry 50 pounds occasionally and 25 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday; he can sit for six hours out of an eight-hour workday; he should avoid even moderate exposure to machinery and heights; he can perform simple instructions; he cannot do fast paced work; he is precluded from intense interaction with coworkers, supervisors, and the public; and he cannot have intense concentration of more than one hour without a five minute break in focus.

---

[5]  The "Paragraph B" criteria are "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.

(Id. at 23).  In making this finding, the ALJ stated that he had considered all of Plaintiff's symptoms and their consistency with the objective medical and other evidence, as required by 20 C.F.R. 416.929 and SSRs 96-4p and 96-7p.  (Id.).  The ALJ also considered opinion evidence pursuant to 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  (Id.).

The ALJ found Plaintiff's allegations concerning the intensity, persistence and limiting effects of his symptoms "less than fully credible."  (AR 24).  Plaintiff's allegations were inconsistent with objective medical evidence showing that Plaintiff responded well to conservative treatment, including "psychotropic medications."  (AR 24, 26).  The ALJ noted that Plaintiff appeared observant and "very clear headed" during the hearing, despite complaining of an inability to focus.  (AR 24). Plaintiff's treatment records showed that he oftejn failed to take prescribed medications, including medication for bipolar disorder.  (Id., AR 27).  However, when Plaintiff did take his medications, his symptoms were "generally well controlled."  (AR 24).  Moreover, Plaintiff's ability to shop, drive, prepare meals, perform household chores, use a computer, and spend time with friends and family diminished the credibility of his alleged functional limitations.  (AR 24-25).

The ALJ gave "great weight" to assessments by Agency examining psychiatrist Romualdo Rodriguez, M.D., and state agency consultative physician J. Hartman, M.D.  (AR 29).  The ALJ found

both physicians' opinions reasonable and supported by the record as a whole. (Id.). However, the ALJ gave "little weight" to the opinion of Plaintiff's treating psychiatrist, Jesus Bucardo, M.D. (AR 30). The ALJ found that Dr. Bucardo's assessment that Plaintiff's difficulty with focus precluded work was inconsistent with the objective medical evidence or Plaintiff's own testimony. (Id.).

At step four, the ALJ found Plaintiff capable of performing his past relevant work as a stock clerk and small products assembler. (AR 31). In reaching this finding, the ALJ considered testimony by VE Joseph Torres, who opined that an individual with Plaintiff's RFC would be capable of performing these jobs. (AR 31-32). Accordingly, the ALJ did not proceed to step five.

After the ALJ issued his unfavorable decision, the Appeals Council reviewed the case. (AR 1-7). The Appeals Council affirmed the ALJ's determination that Plaintiff was not disabled, but found that Plaintiff had no past relevant work. (AR 6). Accordingly, the Appeals Council identified alternative work based on Plaintiff's residual functional capacity. (AR 6-7). The Appeals Council's findings constituted the Commissioner's final decision. (AR 1).

**VI.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097). The substantial evidence standard does not change "merely because the Appeals Council and the ALJ diverge." Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986). Rather, because the Appeals Council's ruling constitutes the Commissioner's final decision, its factual findings must be upheld if they are supported by substantial evidence. See 42 U.S.C. § 405(g).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citation and internal quotation marks omitted). If the evidence can reasonably support either affirming or reversing, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**VII.**

**DISCUSSION**

Plaintiff challenges the ALJ and Appeals Council decisions on two grounds: (1) the ALJ and the Appeals Council rejected, without giving "specific and legitimate reasons," Agency consultative examiner Romualdo Rodriguez, M.D.'s opinion that Plaintiff is limited to simple one- and two-step instructions (Plaintiff's Memorandum, Dkt. No. 15, at 7-8); and (2) the DOT descriptions for both of the alternative jobs that the Appeals Council identified are inconsistent with Plaintiff's limitations. (Id. at 9). The Court disagrees with both contentions. The ALJ adopted, rather than rejected, Dr. Rodriguez's opinion, which was consistent with other evidence in the record. Furthermore, although only one of the alternative jobs identified by the Appeals Council comports with Plaintiff's limitations, this occupation provides positions in sufficient numbers to affirm the Appeals Council's decision.

\\

\\

\\

\\

\\

\\

\\

\\

**A.   The ALJ Did Not Adopt An "Ambiguous" RFC When He Gave "Great Weight" To Both Consulting Psychiatrists' Assessments And Properly Credited Dr. Rodriguez's Opinion**

Social Security regulations require the ALJ to consider all relevant medical evidence when determining whether a claimant is disabled.   20 C.F.R. §§ 404.1520(a), 416.927(c).   "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).

Plaintiff contends that Drs. Rodriguez and Hartman, the state agency physician, arrived at conflicting assessments of Plaintiff's ability to function in a workplace.   (Plaintiff's Memorandum at 7).   According to Plaintiff, Dr. Rodriguez's limitation to "simple one to two step instructions is different from [Dr. Hartman's] limitation to simple and repetitive tasks." (Id.).   Therefore, according to Plaintiff, when the ALJ and Appeals Council accepted Dr. Hartman's assessment, they "implicitly rejected" Dr. Rodriguez's opinion.   (Id. at 7-8). Plaintiff asserts that the failure to state "specific and legitimate reasons" for this purported rejection is reversible error.   (Id.).

The Court disagrees that consultative psychiatrist's opinion was in conflict with the state agency physician's findings.   A restriction to "simple tasks" is consistent with an ability to

carry out "simple instructions."  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (state agency reviewing psychologist's recommended restriction to "simple tasks" is consistent with physician's assessment limiting claimant to "very short simple instructions").  The ALJ's reference to one mental limitation in Plaintiff's RFC did not constitute a "rejection" of a consistent limitation in Dr. Rodriguez's opinion.  See id. Therefore, with respect to Plaintiff's limitations in persistence, pace and concentration, there was no conflict in the medical record for the ALJ or the Appeals Council to resolve.

Because the ALJ did not reject Dr. Rodriguez's opinion, he was not required to provide "specific and legitimate reasons" for doing so.  The ALJ noted Dr. Rodriguez's "simple one or two-step instructions" limitation and Dr. Hartman's "simple repetitive tasks" limitation and concluded that both were "reasonable and supported by the record as a whole."  (AR 29).  Moreover, the ALJ specifically stated that "[b]ased on these two opinions the undersigned found the claimant could perform simple instructions."  (AR 30).  The Appeals Council incorporated the medical consultants' findings of fact in its own decision and specifically incorporated the "simple instructions" limitation in its RFC.  (AR 5-6).  Therefore, the ALJ and Appeals Council decisions were both supported by substantial evidence in the record, and there was no error in the Appeals Council's decision.

**B.   The Appeals Council Identified Alternative Jobs That Were Consistent With Plaintiff's Limitations As Demonstrated By The Medical Evidence**

Plaintiff contends that both jobs identified by the VE and the Appeals Council are inconsistent with Plaintiff's limitations.   (Plaintiff's Memorandum at 9).   The Court disagrees.

**1.   The DOT Description For A Housekeeping Cleaner Does Not Include "Intense" Interaction With The Public And Is Consistent With Plaintiff's RFC**

Plaintiff asserts that the DOT job description for a housekeeping cleaner is inconsistent with Plaintiff's RFC, which precludes Plaintiff from "intense interaction with coworkers, supervisors, and the public."   First, Plaintiff objects on the grounds that "neither the ALJ nor the Appeals Council defines what constitutes 'intense' interaction." (Plaintiff's Memorandum at 10).   Therefore, Plaintiff contends, the Plaintiff's RFC is "ambiguous." (Id.).   Second, Plaintiff contends that "the job of a Housekeeping Cleaner would require [P]laintiff to be exposed to intense interactions with coworkers, supervisors, and the public." (Id.).

Plaintiff fails to cite any source for his contention that work as a housekeeping cleaner requires "intense interaction

[with the public]." While the ALJ and the Appeals Council did not define "intense interaction," the DOT description for a housekeeping cleaner does not directly require personal interactions of any kind. See 4 DOT 323.687-014. To the extent that the DOT description indirectly addresses interactions with coworkers, supervisors and the public, however, its requirements are minimal. A housekeeping cleaner must possess Level One Reasoning, meaning that he can "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."[6] Id. A housekeeping cleaner must also be able to "[s]peak simple sentences." Id.

These requirements are fully consistent with Plaintiff's capabilities. Dr. Rodriguez found Plaintiff "[a]ble to understand, remember, and carry out simple one or two-step job instructions." (AR 340). Dr. Rodriguez considered Plaintiff only "slightly limited in ability to relate and interact with supervisors, coworkers, and the public." (AR 341). Similarly, Dr. Gallucci found Plaintiff able to "[c]arry out simple instructions" and "work in coordination with or proximity to others," including coworkers, without distraction or interruption due to psychological symptoms. (AR 104). Certainly, Plaintiff's

---

[6] In addition to requiring only Level One reasoning, the DOT description rates this occupation as "light work" for the purpose of assessing the required physical strength. See 4 DOT 323.687-014.

testimony about his interaction with family and friends suggests that he is capable of this level of interaction with others.

Plaintiff testified that he is "pretty good with people" and only becomes nervous when confronted with a "large . . . room with a lot of people." (AR 55). Plaintiff told Dr. Rodriguez that he had a "fair relationship with family, relatives, friends, neighbors, and others." (AR 337). Plaintiff regularly interacted with members of his therapy group over a number of years (AR 430-593), and volunteered with the National Alliance on Mental Illness. (AR 59-60). Accordingly, there is no inconsistency between Plaintiff's capabilities and the DOT definition of a housekeeping cleaner.

**2.   Plaintiff Is Not Capable Of Working As A Mail Clerk**

Plaintiff asserts that Plaintiff would be unable to perform the second job the Appeals Council identified, mail clerk, because this job requires reasoning skills that "exceed [P]laintiff's limitation." (Plaintiff's Memorandum at 12). Plaintiff contends that, under the DOT listings, a mail clerk must possess "Level Three" reasoning skills that "exceed the Appeals Council RFC assessment that limits Plaintiff to simple instructions." (Id.). The Court agrees.

The DOT listing for a mail clerk incorporates "Level Three" reasoning. See 4 DOT 209.687-026, 1991 WL671813 (1991). A mail

clerk should therefore be able to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."  Id.

The Ninth Circuit recently held that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 reasoning." Zavalin v. Colvin, ___F.3d____, 2015 WL728036, at *3 (9th Cir. Feb. 20, 2015).  "When there is an apparent conflict between the vocational expert's testimony and the DOT -- for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle -- the ALJ is required to reconcile the inconstancy."  Id. (citing Massachi v. Astrue, 486 F.3d 1149, 1153-54) (9th Cir. 2007).  The ALJ must ask the vocational expert whether his testimony conflicts with the DOT and, if so, "whether there was a reasonable explanation for the conflict."  Massachi, 486 F.3d at 1153-54.  "[I]n order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation."  Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).

Here, the ALJ asked the vocational expert whether there were any inconsistencies between the ALJ's hypotheticals and the DOT descriptions for the identified alternative jobs.  (AR 63).  The

vocational expert testified that the hypotheticals were consistent with the DOT listings. (AR 64). Because the ALJ found that Plaintiff could perform his past relevant work, the ALJ did not base his decision on the availability of alternative occupations. (See AR 31-32). However, the Appeals Council based its finding that Plaintiff was not disabled on the availability of alternative work that was appropriate given Plaintiff's limitations. (AR 6-7). The Appeals Council adopted the vocational expert's findings. (AR 5-6). Accordingly, it neither recognized nor resolved an apparent conflict between the vocational expert's testimony and the DOT listing for a mail clerk.

The Court must therefore determine whether the error was harmless. See Zavalin, 2015 WL728036 at *3 (ALJ erred in failing to reconcile apparent conflict between claimant's limitations and DOT Level Three reasoning). The Court "may not reverse an ALJ's decision on account of an error that is harmless." See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Moreover, "[t]he burden of showing that an error is harmful normally falls upon the party attacking the [A]gency's determination." Id. (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

Here, the error was harmless. Plaintiff contends that the Appeals Council erred because both of the identified alternative occupations -- housekeeping cleaner and mail clerk -- "require demands that exceed Plaintiff's RFC." (Plaintiff's Memorandum at

14).    Because  the  housekeeper  cleaner  position  requires  only
Level  One  reasoning,  which  requires  an  ability  to  "carry  out
simple  one-  or  two-step  instructions,"  the  Appeals  Council
decision  must  be  upheld.    See  4  DOT  323.687-014.    The
consultative  examining  physician  specifically  found  that
Plaintiff  possessed  this  ability.  (AR  340).

Under  the  Social  Security  Act,  an  individual  will  not  be
found  disabled  if,  given  his  physical  and  mental  limitations,  he
is  able  to  perform  work  "which  exists  in  significant  numbers
either  in  the  region  where  such  individual  lives  or  in  several
regions  of  the  country."  Beltran  v.  Astrue,  700  F.3d  386,  389
(9th  Cir.  2012)  (quoting  42  U.S.C.  §  423(d)(2)(A)).    The
vocational  expert  testified  that  2,300  housekeeping  cleaner  jobs
exist  regionally  and  425,000  exist  nationally.    (AR  62-63).
Although  there  is  no  "bright-line  rule  for  what  constitutes  a
'significant'  number  of  jobs,"  id.,  the  Ninth  Circuit  has  found
2,300  or  fewer  positions  in  a  regional  economy  to  be  sufficient.
See  Moncada  v.  Chater,  60  F.3d  521,  524  (9th  Cir.  1995)  (2,300
jobs  in  San  Diego  County  and  64,000  nationwide  is  sufficient);
Thomas  v.  Barnhart,  278  F.3d  947,  960  (9th  Cir.  2002)  (1,300  jobs
in  Oregon  region  and  622,000  nationally  is  sufficient).

Accordingly,  substantial  evidence  in  the  record  supports  the
Appeals  Council's  finding  that  Plaintiff  may  find  a  "significant"
numbers  of  jobs  in  the  regional  economy,  and  that  Plaintiff  is
not  disabled.    Because  the  decision  remains  valid,  any  error  in

involving the mail clerk position is harmless error.   No remand is required.

## VIII.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED:  March 2, 2015

                                             /S/
                                   SUZANNE H. SEGAL
                                   UNITED STATES MAGISTRATE JUDGE


**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**